

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 7030 | DATE | 2/28/2003 |
| CASE TITLE | | In Re: Comdisco., et al. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. The Court affirms the decision of the United States Bankruptcy Court.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 0 3 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 14 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | JD | courtroom deputy's initials | 03 FEB 28 PM 4:56 | date mailed notice |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| COMDISCO, INC., et al., | ) | |
| | ) | |
| Reorganized Debtors. | ) | |
| _____ | ) | |
| | ) | |
| ENRICO GALIETTA, et al., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | Case Nos. 02 C 7030 |
| | ) | and 02 C 7031 |
| COMDISCO HOLDING COMPANY, | ) | (consolidated) |
| INC., et al., | ) | |
| | ) | |
| Appellees. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case is before the Court on an appeal from the United States Bankruptcy Court. Appellants are former employees of appellee Comdisco. They contend that Comdisco has wrongfully refused to pay them bonuses to which they are entitled pursuant to an employee incentive plan. Appellants filed applications in the bankruptcy court for payment of these bonuses as an administrative expense pursuant to section 503(b)(1)(A) of the Bankruptcy Code. The bankruptcy court denied the applications. For the reasons stated below, we affirm the bankruptcy court's decision.

### BACKGROUND

On July 16, 2001, Comdisco and certain of its domestic subsidiaries and affiliates filed

voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. The debtors continued to operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Code. Subsequently, Comdisco, Inc. ceased operations, and the debtors were reorganized as Comdisco Holding Company, Inc.

As part of the reorganization process, Comdisco obtained the bankruptcy court's approval to sell its world-wide disaster recovery services business, the Availability Solutions Division, to SunGard Data Systems, Inc. The sale closed on November 15, 2001. Prior to the closing, on August 29, 2001, the bankruptcy court authorized Comdisco to continue in effect until the closing certain incentive plans that had been developed and partially implemented before the Chapter 11 filings. The purpose of the incentive plans was to "boost[] morale and discourag[e] resignations among key employees, as well as incentiviz[e] employees to vigorously assist in retaining the value of the Debtors' estates through the sale process." R. 59 (Debtor's Mot. for Order Authorizing Continuation of Key Employee Retention, Incentive, and Severance Programs ¶ 45).[1]

Appellants are former Comdisco employees who worked in the Availability Solutions Division and who participated in an incentive plan. Comdisco employed appellants until the Division was sold to SunGard on November 15, 2001. On that day, appellants became employees of SunGard.

The present dispute concerns bonuses that appellants allege Comdisco owes them

---

[1] Two cases were consolidated for purposes of this appeal, Nos. 02 C 7030 and 02 C 7031. The content of the records in the two cases is almost identical, but their page numbers do not correspond. For convenience, citations to the Record in this opinion refer to the record in case No. 02 C 7030.

2

pursuant to the incentive plan.[2] The plan is a two page document requiring the employee's signature at the bottom of the second page. By its terms, the plan covers Comdisco's 2001 fiscal year – October 1, 2000 through September 1, 2001 – and establishes two dates for the payment of bonuses – May 15, 2001 and December 1, 2001. A provision entitled "Qualifying Participants" sets out the requirements for plan eligibility and states in relevant part that "Employees whose employment terminates for **any** reason prior to the payment date . . . are not eligible to participate or receive payments under this plan." R. 20 (emphasis in original). A provision entitled "No Vested Rights" states that "No employee shall have any vested interest in the Incentive Plan prior to any payment by Comdisco. This document is only designed to communicate the basic provisions of the Plan, and should not be construed as a contract between a participant and Comdisco." R. 21.

With the sale of Availability Solutions to SunGard impending, Comdisco agreed to extend the plan – which by its terms was set to expire on September 1, 2001 – until the November 15, 2001 closing of the sale. Comdisco set February 15, 2002 as the payment date for any bonuses that might be owed with respect to this extension period. Because workers in the Availability Solutions Division would no longer be Comdisco employees on February 15, the acquisition agreement between Comdisco and SunGard obligated Comdisco to pay any bonuses due as a result of the plan's extension.

On November 15, 2001, appellants became SunGard employees. On December 1, 2001 –

---

[2]Appellants characterize the payments as "commissions," and Comdisco refers to them as "bonuses." Despite this difference, the parties are in agreement that the distinction does not affect the merits of this appeal. Because the incentive plan itself refers to the incentive as a "cash bonus," the Court will use the term bonus rather than commission.

3

the second scheduled payment date for the plan's original period – Comdisco paid bonuses to appellants for the period ending September 1, 2001. On or about December 20, 2001, SunGard terminated appellants' employment. On February 15, 2002 – the scheduled payment date for the extension period – Comdisco paid bonuses to those former Comdisco employees who had participated in the plan's extension and who remained in SunGard's employ on that day. Appellants were not among this group. Because they were no longer employed by SunGard on the February 15 payment date, Comdisco deemed appellants not to have met the plan's requirement that a participant be employed on the payment date in order to receive a bonus.

Appellants maintain that they are entitled to bonuses for the extension period, and on June 13, 2002, they filed applications in the bankruptcy court for payment of the bonuses as an administrative expense. They state in their applications that Comdisco agreed to extend the plan and to pay bonuses "under the Plan" for the extension period. R. 16 (Application for Allowance of Post-Pet. Compensation as Administrative Expense ¶¶ 6, 7). Comdisco's failure to tender the bonuses, they claim, violated the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1-115/15. They also maintain that principles of estoppel require Comdisco to pay the bonuses.

The bankruptcy court denied the applications. In an oral ruling, the court stated that appellants had "not earned the plan payments and had no contractual right to them." R. 135 (Tr. of Aug. 20, 2002 Proceedings). Appellants did not earn the bonuses because under the plan "employment on [the payment] date is [a] condition precedent to receiving the payment." *Id.* 134. Because SunGard had terminated their employment before the February 15 payment date, the court ruled that the former employees "weren't eligible to receive such payments since they

4

weren't employed on the date of the payment." *Id.* 135.

The court rejected appellants' argument that a contract was formed by Comdisco's promise to extend the plan and appellants' continued employment. The court found the plan's "no vested rights" provision, which is "located directly above the signature line and is conspicuous and noticeable," to be an enforceable disclaimer under Illinois law. *Id.* It reasoned that "since the plan specifically states that it should not be construed as a contract between a participant and Comdisco, . . . there is no contractual right to those bonuses." *Id.* The court consequently found no violation of the IWPCA, which "does not confer any rights to recovery in the absence of contractual right." *Id.*

The court likewise disposed of the former employees' promissory estoppel and equitable estoppel arguments: because "the language of the plan is clear . . . the employees could not have justifiably or reasonably relied on any oral statements that contradicted that language." *Id.* at 136. Moreover, the court also found "no evidence of any kind of any oral agreement superseding the [plan]," and "no showing of any . . . bad faith conduct." *Id.* at 136-37.

The former employees have appealed the bankruptcy court's denial of their applications. For the reasons stated below, the Court affirms the bankruptcy court's decision.

## DISCUSSION

In reviewing a decision by the bankruptcy court, the district court applies the same standards of review that govern other appeals in the federal system. We defer to the bankruptcy court's findings of fact, reviewing them under the "clearly erroneous" standard. *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000). Conclusions of law are reviewed *de novo*. *Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832, 835 (7th Cir. 2002). Appellants bear the burden of

proving their entitlement to an administrative expense by a preponderance of the evidence. *In re Sheridan*, 187 B.R. 611 (N.D. Ill. 1995).

Appellants maintain that Comdisco is contractually obligated to pay them bonuses for the extension period. They further claim that by breaching this obligation, Comdisco has violated the IWPCA. The IWPCA provides for the timely payment of a terminated employee's full final compensation: "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5. The IWPCA defines "final compensation" as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer *pursuant to an employment contract or agreement* between the 2 parties." *Id.* 115/2 (emphasis added).

The IWPCA, then, merely requires "that the employer honor his contract"; it does not confer rights to compensation in the absence of a contract. *Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986). Unless appellants can establish that Comdisco is under a contractual obligation to pay the bonuses, the IWPCA has no application to this case.

Appellants maintain that they are contractually entitled to bonuses under two theories: the plan itself gave rise to a contract, and a separate promise gave rise to a contract. The existence of a contract is a question of law that we review *de novo*. *Barefield v. Vill. of Winnetka*, 81 F.3d 404, 709 (7th Cir. 1996); *Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1102 ( 7th Cir. 1997) ("Under Illinois law, when the basic facts are not in dispute, the existence of a contract is a question of law." (citing *Cottingham v. Nat'l Mut. Church Ins. Co.*, 290 Ill. 26, 124

6

N.E. 822 (Ill. 1919))). Failing a contractual obligation, appellants maintain that Comdisco is estopped from denying appellants the bonuses.

A.  **Claim Based on the Plan**

Appellants argue that the plan's "no vested rights" provision does not bar their claim for bonuses under the plan. They maintain that this disclaimer is insufficiently conspicuous to be enforced under Illinois law. The bankruptcy court rejected this argument, finding that the provision complied with Illinois law.

Appellants' unstated assumption is that the plan itself gave rise to a binding contract. Under Illinois law, a statement of employment policy may give rise to an enforceable contract if three conditions are met:

> (1) the language of the statement sets forth a promise in terms clear enough to cause a reasonable employee to believe that an offer has been made; (2) the statement is distributed to the employee, so that the employee is aware of its contents and reasonably construes it to be an offer; and (3) the employee accepts the offer by commencing or continuing to work after reading the statement.

*Tatom v. Ameritech Corp.*, 305 F.3d 737, 742 (7th Cir. 2002) (citing *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318 (Ill. 1987)). An effective disclaimer can prevent a policy statement from giving rise to a contract by impeding any reasonable belief that an offer has been made. *See Tatom*, 305 F.3d at 743 (holding that an "express disclaimer foreclose[d] any reasonable expectation that [the employee] had been promised a bonus.")

The disclaimer at issue here states:

**No Vested Rights**: No employee shall have any vested interest in the Incentive Plan prior to any payment by Comdisco. This document is only designed to communicate the basic provisions of the Plan and should not be construed as a

7

contract between a participant and Comdisco. This Plan will be interpreted under
Illinois law, without regard to its conflicts of law rules.

R. 21. This provision resembles the one at issue in *Tatom v. Ameritech Corp.*, *supra*, which the Seventh Circuit found "expressly disavow[ed] any notion that a bonus had been promised." *Tatom*, 305 F.3d at 743. There, the provision appeared on the last page of a nine page compensation brochure, was of the same typeface as the rest of the document, and appeared under the heading "Notice." It stated that the brochure

> is a statement of [the employer's] intentions and does not constitute a guarantee that any particular amount of compensation will be paid. It does not create a contractual relationship or any contractually enforceable rights between [the employer] and the employee.

*Id.* (quoting the compensation plan). The Seventh Circuit found that this provision doomed the employee's contractual claim because it "did not give rise to a reasonable belief" that he would receive a bonus.[3] *Id.* at 744. Appellants' claim likewise fails. The "no vested rights" provision states in similarly plain language that the document only communicates the plan's provisions and that the plan should not be considered a contract.

Appellants argue that the "no vested rights" provision is unenforceable because it is insufficiently conspicuous to satisfy Illinois law. The cases they cite, however, militate in favor of finding the provision at issue here enforceable. The disclaimer in *Hicks v. Methodist Medical Center*, 229 Ill. App. 3d 610, 593 N.E.2d 119 (1992), was found to be insufficiently conspicuous

---

[3]Appellants incorrectly argue that *Tatom* is inapposite. They claim that the reason the court upheld the bonus's denial is that the plaintiff quit his job to work for the defendant's competitor, "an act that specifically precluded payment under his agreement." Appellants' Reply Br. at 10. The court did not, however, reach the question whether the employer improperly withheld the bonus based on plaintiff's joining a competitor. Having found the disclaimer to doom contract formation, the court concluded that it did not need to consider this additional question. *Tatom*, 305 F.3d at 744.

8

because it was located on the thirty-eighth page of a thirty-nine page employee handbook, appeared under the obscure heading "Revisions," and was not "in any way prominently displayed." *Id.* at 614, 593 N.E.2d at 121. The disclaimer in *Long v. Tazewell/Pelkin Consolidated Communications Center*, 215 Ill. App. 3d 134, 574 N.E.2d 1191 (1991), was even more obscure. Not only was the disclaimer "not set out separate and apart[;] . . . it was in effect hidden within the text describing the [employee's] duties." *Id.* at 140, 574 N.E.2d at 1193-94. It was "not unequivocal" and did not specifically state that the employer would not be bound by the handbook's provisions. *Id.*, 574 N.E.2d at 1194.

By contrast, the "no vested rights" provision in this case clearly and unequivocally states that the plan is not a contract and that an employee has no vested interest in a bonus until its payment. Far from being hidden in a long employee manual, the provision is located on the second page of a two-page document under an unambiguous heading which itself disavows the existence of vested rights. It is comprised of three sentences and is located directly above the signature line on which the employee avers that he has read the plan and agrees to its terms and conditions. It is also adequately set apart; the words "No Vested Rights" are bold and underlined.

Appellants argue that the provision is nonetheless "confusing" because its third sentence is a choice of law provision and that "[u]pon reading the paragraph, any reasonable person would be misled to conclude that even though the particular document might not contain enforceable rights, somewhere there existed a more detailed and complete Plan document that did confer enforceable rights." Appellants' Br. at 13. These arguments lack merit. The provision's language is very clear on its face, and nothing in it would lead a reasonable person to assume that

9

a different document confers enforceable rights. The presence of a single sentence at the end of the provision establishing Illinois law as the law of choice does not undermine its clarity. We therefore agree with the bankruptcy court's ruling that the provision was conspicuous, enforceable, and a bar to the formation of a binding contract in this case.

Appellants make the additional argument that under Illinois law they cannot be forced to forfeit their bonuses for failing to be employed on the payment date. In support of this argument they rely on *Camillo v. Wal-Mart Stores, Inc.*, 221 Ill. App. 3d 614, 582 N.E.2d 729 (1991), in which the Illinois Appellate Court held that the plaintiff was entitled to a *pro rata* share of his bonus under the IWPCA. In *Camillo*, the benefit program provided that "assistant managers are paid a bonus each year . . . [and] must be on the payroll and actively working on January 31, or they will forfeit their bonus." *Id.* at 617, 582 N.E.2d at 731 (quoting the benefit program). By firing the plaintiff on December 31, the employer made it impossible for him to fulfill the requirement of employment on January 31. Under these circumstances, the court found that the employee had earned a *pro rata* share of his bonus.

Three important differences distinguish *Camillo* from the instant case. *See Tatom v. Ameritech Corp.*, No. 99 C 683, 2000 WL 1648931, at *8-9 (N.D. Ill. Sept. 28, 2000), *aff'd*, 305 F.3d 737 (7th Cir. 2002). First, the plan here contains no such unequivocal statement that employees are paid bonuses each year. Second, the plan in *Camillo* did not contain, or at least the court did not consider, a disclaimer preventing the emergence of a contractual right. And third, in *Camillo*, it was the defendant that rendered the employee's compliance with the requirement impossible by firing him before the vesting date. Here, Comdisco was in no way involved with appellants' inability to meet the employment requirement since it was SunGard,

10

not Comdisco, that terminated their employment.

## B.     Claim of Superseding Promise

Appellants contend that a "new agreement" also supports their contractual claim. They allege that Comdisco promised to pay them commissions for the extension period "regardless of their employment status." Appellants' Reply Br. at 9. According to appellants, this "new offer," coupled with appellants' acceptance by remaining on the job, gave rise to a binding contract. As noted by the bankruptcy judge, there is no direct evidence that Comdisco made such a promise. According to appellants, the fact that an arrangement other than the plan itself was in effect for the extension period is manifest in the fact that the plan, which by its terms expired on September 30, 2001, does not cover the extension period. One essential term of the arrangement is, therefore, outside the four corners of the plan document. Even assuming, however, that a new agreement governs the payment of the bonuses, for appellants to succeed in establishing a contractual right they would have to establish that the new agreement deviated from the plan's plain language in two other essential ways – by excluding the requirement that a participant be employed on the payment date and also excluding the disclaimer that the Court has already found prevents the formation of a contract.

Appellants submit that the plan, by its terms, requires employment by Comdisco on the payment date but is silent with regard to employment by SunGard. As evidence that this requirement was suspended, appellants point out that all parties knew appellants would no longer be employed by Comdisco on the February 15 payment date. Appellants' argument that given this state of affairs, some modification had to be in effect for the extension period has merit. But it only gets them part of the way. Appellants bear the burden of affirmatively establishing their

11

contractual entitlement; merely pointing out the plan was modified does not establish the content of that modification. It certainly does not establish a promise that bonuses would be paid regardless of employment status and despite the "no vested rights" provision. Appellants provided no evidence that such a promise was made. For this reason, and because there was no evidence that the plan was modified to exclude the "no vested rights" provision, appellants failed to meet their burden of establishing a contractual right to the bonuses. We therefore affirm the bankruptcy court's conclusion that no superseding promise gave rise to a contractual obligation to pay bonuses and that absent a contractual breach, there was no violation of the IWPCA.

## C. Claims of Estoppel

Appellants allege that Comdisco is estopped from denying its obligation to pay them bonuses. To succeed on a promissory estoppel claim, appellants must prove that they relied on "an unambiguous promise" made by Comdisco. *Quake Constr. Co. v. Am. Airlines, Inc.*, 141 Ill.2d 281, 310, 565 N.E.2d 990, 1004 (1990). Whether such a promise was made is a question of fact that we review for clear error. *R.S. Bennett & Co., Inc. v. Econ. Mech. Indus., Inc.*, 606 F.2d 182, 186 (7th Cir. 1979). As noted above, the record contains no evidence that Comdisco made any promise other than to extend the plan and to pay commissions pursuant to the plan. There is certainly no evidence that Comdisco made an "unambiguous promise" to suspend the employment requirement. Given this lack of evidence, the bankruptcy court did not clearly err in denying appellants' promissory estoppel claim, and we therefore affirm its decision.

To prove a claim of equitable estoppel, appellants must demonstrate that they relied on a misrepresentation by Comdisco. *Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir. 1990). "Whether facts proven are sufficient to constitute an estoppel is a question of law," which we

12

review *de novo*. *Jennings Water, Inc. v. City of North Vernon, Ind*, 895 F.2d 311, 316 (7th Cir. 1989). Appellants argue that because the Availability Solutions sale was impending when the promise to extend the plan was made, Comdisco is estopped from asserting the requirement that a participant "continue to be employed by the Debtor on the payment date." Appellants' Br. at 23. But that is not Comdisco's position; it paid bonuses to its former employees who were employed by SunGard on that date. As discussed above, appellants have presented no evidence that the plan's requirement of employment as of the payment date was suspended entirely. They may have misunderstood Comdisco's intentions, but they have presented no evidence that Comdisco misrepresented its intention of requiring a participant to be employed in the Availability Solutions Division.

On a related note, appellants allege that Comdisco has not enforced the employment requirement in all cases. They claim that on December 1, 2001 – the second payment date for the plan's original period – Comdisco paid bonuses to former employees who had been terminated before September 30, 2001 – and who therefore never became SunGard employees – although they failed to meet the employment requirement on the payment date. Appellants' Br. at 8-9. Appellants allege that this different treatment amounts to favoritism and discrimination, but it is unclear, and appellants have not shown, how this allegation advances their claims. Although evidence of non-enforcement could support an estoppel argument, appellants neither allege nor provide evidence that they relied on the non-enforcement of the plan's employment requirement.

For these reasons, we affirm the bankruptcy court's rejection of appellants' equitable estoppel argument.

13

## D.   Request for Hearing

Appellants ask the Court, in the event we do not find that the bankruptcy court wrongfully denied their applications, to remand the case for an evidentiary hearing so that they may introduce evidence on their claims. They claim that "[i]f there are factual disputes, Appellants are entitled to an evidentiary hearing." Appellants' Br. at 23. Although we affirm the bankruptcy court's decision in its entirety, we nevertheless address this request in order to make clear why appellants are not entitled to a new opportunity to prove their claims.

Appellants advance two excuses for the absence in the record of an evidentiary basis for their claims. First, they state that they "were never given an opportunity" to present evidence in support of their claims. Appellants' Reply Br. at 8. Yet there is absolutely no indication anywhere in the record that the bankruptcy judge foreclosed appellants' ability to bolster their claims with documentary evidence such as affidavits or written promises that bonuses would be paid regardless of a participant's employment status. No such evidence was submitted.

Second, appellants maintain that they were not required to present evidence "because the Debtor immediately conceded that the Applications for compensation were factually accurate." Appellants' Reply Br. at 8. They maintain that Comdisco's concession in open court that "there's no dispute on the underlying factual issues" relieved appellants of their burden of marshaling evidence in support of their claims. R. 86 (Tr. of July 15, 2002 Proceedings). Appellants have misunderstood the import of Comdisco's statement. Comdisco's concession referred only to the factual allegations contained in the applications, which, on the date the statement was made, were the only submissions appellants had filed. In the applications, claimants state that Comdisco assured its employees that it would "continue to pay commissions

14

*under the Plan*," "to extend *the Plan* to cover the [extension] period," and to "pay commissions *under the Plan* for the period through November 15, 2001." R. 15-16 (Application for Allowance of Post-Pet. Compensation as Administrative Expense ¶¶ 4, 6, 7, 9) (emphasis added). The applications do not allege that Comdisco promised to pay bonuses regardless of a participant's employment status. The only implication of Comdisco's concession, therefore, is that it promised to extend the plan and to make payments pursuant to the plan, promises Comdisco contends it has kept. In sum, appellants were not relieved of the burden of presenting the bankruptcy court with evidence supporting their claims. Their request that we remand the case to afford them the opportunity to do so now is denied.

## CONCLUSION

For the reasons stated above, the Court affirms the decision of the United States Bankruptcy Court.

MATTHEW F. KENNELLY
United States District Judge

Date: February 27, 2003